**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SCOTT ALAN RICHMOND,**

                    **Petitioner,**                    **06-CV-382**
                                                                             **(03-CR-407)**

          **v.**

**UNITED STATES OF AMERICA.**

                    **Respondent.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

      Scott Alan Richmond moves pursuant to 28 U.S.C. § 2255 to vacate his criminal conviction and sentence.  The government opposes the motion. For the reasons that follow, the motion is denied and the petition is dismissed.

**II.  BACKGROUND**

      From February 1996 until March 2002, Richmond was employed as a computer technician by Street & Competition ("S & C"), a motorcycle parts and accessory retailer. The principals of S & C, Miles Frederick ("Frederick") and Sera Porter ("Porter"), gave Richmond access to several credit cards to purchase inventory and other business-related items.  In March 2002, Porter brought to Frederick's attention several unusual charges on

one of the company credit cards, the First USA MasterCard ("First USA"). Frederick then reviewed past statements for that card and found charges that had nothing to do with the business. They concluded that Richmond had been using the card for his own personal expenses and reported their conclusion to the police. On March 28, 2002, an investigator with the New York State police interviewed Richmond. Richmond admitted to using the First USA card for personal expenses beginning in the summer of 2000 as a result of financial problems he and his wife were experiencing.

In October 2003, Richmond was charged in a one count federal indictment with credit card fraud in violation of 18 U.S.C. §§ 1029(a)(5) and (c)(1)(A)(ii). See indictment, dkt. # 1 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.). In this regard, the indictment charged that Richmond knowingly, willfully and with intent to defraud did, without authorization, use S & C's credit cards and credit card numbers

> to received payments and other things of value for himself, his family, and his wife's former business, Faustina, in Bennington, Vermont, totaling well in excess of $1,000 during any one year period and resulting in total unauthorized charges to S & C of approximately $451,981.89 and, thereby, did affect interstate commerce.

In violation of Title 18, United States Code, Sections 1029(a)(5) and (c)(1)(A)(ii). Indictment, p. 2.

On December 1, 2003, without a plea agreement and on the advice of counsel, Richmond entered a plea of guilty to the sole count in the indictment. See Dec. 1, 2003 Trans. of Proceedings, Govt. Ex. 5 ("Plea Transcript"). Familiarity with Petitioner's plea allocution, as set forth in the Plea Transcript, is presumed. Suffice it to say that Richmond stated, under oath and after being advised of his rights and the consequences of a plea of guilty, that he was pleading guilty freely and voluntarily and because he was in fact guilty

2

of the crime charged. See generally id.. The Court accepted the plea, finding that:

> Mr. Richmond pled guilty freely and voluntarily; that he is and was competent to enter such a plea; that he understands the charges against him and the consequences of pleading guilty; that there is and was basis in fact for the Court accepting and entering the plea.

Id. at pp. 18-19.

On April 13, 2005, the Court made a finding that the amount of the loss for purposes of sentencing was $451,981.89. See April 13, 2005 Transcript of Sentencing Hearing, Govt. Ex. 6, p. 9.  This finding was based upon Richmond's admission at the time of his plea that he was guilty of the crime charged in the indictment and as proffered by the government during the plea allocution. See id.   Nevertheless, because Richmond contended that the amount of the loss was substantially less than $451,981.89, the Court thereafter determined to engage in further fact finding on the amount of the loss.

On April 29, 2005, the Court conducted a telephone conference with counsel and the United States Probation officer preparing the Presentence Investigative Report ("PSR") regarding the amount of the loss. See dkt. entry # 22 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.).  After addressing the issue, the Court advised the parties to report back in one week whether they had reached a stipulation on the amount of loss.  Id.  The Court further advised that, without a stipulation, the Court would conduct additional fact finding on the issue.

A stipulation was not reached. On May 24, 2005, the Government submitted an affidavit from Porter attesting to the amount of loss. See dkt. # 23 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.). On May 27, 2005, the Court adjourned sentencing until August 9, 2005. See dkt. # 24 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.).

On June 1, 2005, the United States Probation Office issued the PSR which concluded, *inter alia*, that the amount of the loss attributable to Richmond's crime was $378,692.63. See PSR ¶ 7.  On June 14, the Government submitted a sentencing memorandum. See dkt. # 25 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.).  On July 27, 2005, Attorney Lori Levinson, Esq. (Richmond's current counsel) requested an adjournment of the sentencing date so that she could be substituted in as counsel for Richmond. See dkt. # 28 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.). The Court denied the adjournment request. Id.

In the instant Section 2255 action, Richmond's then-attorney, Thomas O'Hern, Esq., submits an affidavit in which he attests that throughout his period of representation, Richmond repeatedly failed to provide him with evidence that refuted the government's loss calculation. See O'Hern Aff. ¶¶ 7-9, 16-30.   Just before the August 8, 2005 sentencing, Richmond finally provided an unsworn statement purporting to show that he was not responsible for most of the loss. See dkt. #s 30 & 31. O'Hern "felt that his statement was not supported by either his initial statement to the state police or the documents provided to the defense by the government." Id. ¶ 31. O'Hern was also concerned that Richmond's unsupported denial of responsibility for most of the loss potentially jeopardized Richmond's eligibility for a 3 level sentencing reduction for acceptance of responsibility. Id. ¶ 28.  O'Hern concluded:

> Given all of the evidence to the contrary, I could not reasonably sign on to Mr. Richmond's position, and therefore I simply filed his statement, as the sentencing memorandum of the defense, without comment, and let the court make of it what it would.

Id. ¶ 32.

At sentencing, O'Hern argued, *inter alia*, that the full amount of the loss proffered by the government should not be attributed to Richmond because information regarding many of the older charges was lost or unavailable, because some of the proffered loss included interest and late charges, and because some of the proffered loss was for equipment that was in S & C's possession. See August 8, 2005 Sentencing Transcript, pp. 5-7. Richmond took a position similar to his written statement, arguing that the loss attributable to him, exclusive of finance charges, was approximately $123,000. See id. p. 8. O'Hern also argued that Richmond should receive a 3 point reduction for acceptance of responsibility because Richmond pled guilty and, at the time of the plea, the government was aware that Richmond contested the amount of loss alleged in the indictment. Id. p. 5.

The Court accepted the arguments proffered by O'Hern regarding the amount of loss but concluded that, even when backing out items such as the older losses, late fees and interest, and equipment in S & C's possession, the loss was still well in excess of $200,000.00. Id. p. 9. Thus, the Court found that pursuant to U.S.S.G. 2B1.1(b)(1), Richmond's base offense level of 6 would be increased 12 points. Id. p. 10. The Court further found that, based upon Richmond's in-court denial of responsibility for most of the loss, he was not entitled to a 3 level reduction for acceptance of responsibility. Id. at p. 11. The Court sentenced Richmond to a term of incarceration of 33 months and set restitution at $367,000.50. Id. pp. 11-14.

A notice of appeal was filed but the appeal was withdrawn "pending determination of the habeas petition in the district court." See Jan. 5, 2005 Mandate, United States v. Richmond (2d Cir. 2005), dkt. # 51 in United States v. Richmond, 1:03-CR-407 (N.D.N.Y.). The instant Section 2255 motion is based on the following arguments:

      1.    Richmond's attorney was constitutionally ineffective for advising Richmond to plead guilty to an indictment alleging a loss of approximately $450,000 when Richmond maintained that he was responsible for a significantly lower loss amount;

      2.    Richmond's attorney was constitutionally ineffective for failing to vigorously contest the amount of loss attributable to Richmond's criminal acts prior to and at sentencing;

      3.    Richmond's attorney was constitutionally ineffective for failing to submit a Sentencing Memorandum as required by the Court's Uniform Presentence Order;

      4.    Richmond's attorney was constitutionally ineffective for failing to argue for a downward departure from the government's recommended guideline level for extraordinary family responsibilities; and

      5.    Richmond's plea should be vacated because he did not knowingly and intelligently waive his right to trial based on his counsel's misrepresentation that he could challenge the amount of loss attributable to his criminal acts prior to or at sentencing.

## III. DISCUSSION

### a. Section 2255 Standard

A § 2255 challenge is limited to claims that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Thus, relief pursuant to section 2255 is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which

inherently results in [a] complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)(quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)). In a Section 2255 proceeding, a petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

### b. Arguments Not Raised On Direct Appeal

"It is well settled that a Section 2255 motion is not a substitute for direct appeal." Graff v. United States, 269 F. Supp.2d 76, 78 (E.D.N.Y. 2003)(citing United States v. Frady, 456 U.S. 152, 165 (1982); United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)). Accordingly, "Section 2255 claims not raised on direct review are procedurally barred unless they raise constitutional or jurisdictional claims, or result in a 'complete miscarriage of justice.'" Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002)(quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)). "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)(citing Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)); see Arroyo v. United States, 2002 WL 662892, at * 2 (S.D.N.Y. April 22, 2002)(same) (citing Amiel v. United States, 209 F.3d 195, 198 (2d Cir. 2000)). This rule does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 123 S. Ct. 1690, 1696 (2003).

To demonstrate cause, a petitioner must be able to show that the factual basis for a

claim was not reasonably available, despite the exercise of reasonable diligence. <u>United States v. Helmsley</u>, 985 F.2d 1202, 1205-08 (2d Cir. 1993).  The "cause" must be "something *external* to the petitioner, something that cannot fairly be attributed to him ...."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)(emphasis in original).

In order to establish "actual innocence," a movant must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).  Actual innocence means "factual innocence, not mere legal insufficiency."  <u>Id.</u>  "The Supreme Court in <u>Bousley</u> also made clear that when a habeas petitioner is required to meet the 'actual innocence' standard, he must satisfy a higher hurdle than the 'prejudice' prong of the cause and prejudice standard." <u>De Jesus v. United States</u>, 161 F.3d 99, 103 (2d Cir. 1998).

To the extent that Richmond's fifth ground is a direct attack on the sufficiency of his plea, the claim is procedurally barred because it was not raised on direct appeal nor has Richmond established cause for not rasing it or his actual innocence.  Nonetheless, to the extent that the fifth ground is another theory of constitutionally ineffective assistance of counsel, the Court will consider the claim. <u>See</u> <u>Ventura v. Meachum</u>, 957 F.2d 1048, 1058 (2d Cir. 1992)("Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid.").

**c.  Ineffective Assistance of Counsel Standard**

In order to state a cognizable Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ...defendant."  <u>United

8

States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001)(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000)(quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985)(Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.")(citing Strickland, 466 U.S. at 688-89).  Furthermore, the Court must evaluate counsel's performance from his perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998)(citing Strickland, 466 U.S. at 689).

To satisfy the second prong of Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

9

### d.  Ineffectiveness in Advising Client to Enter Guilty Plea

Richmond's first claim is that his attorney was constitutionally ineffective for advising him to enter a guilty plea to a specific dollar amount of loss when Richmond had indicated his desire to contest the amount of loss. His fifth claim, which is similar, is that his plea

> was induced by O'Hern's misrepresentation to him that he would be free to challenge the amount of loss involved in the offense at sentencing. Because Richmond was incorrectly advised about the rights he would be giving up – i.e., that he in fact would not be free to challenge the amount of loss he allocuted to, his plea was rendered involuntary.

Pet. Mem. L. p. 21.

As indicated above, the two claims are analyzed as ineffective assistance of counsel claims.

> The Supreme Court has held "that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). To establish an ineffective assistance claim within the context of a guilty plea, a petitioner must show that his counsel's constitutionally ineffective performance affected the outcome of the plea process such that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. See also United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996)("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' " (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)(alteration in original)).

Genao v. United States, 2005 WL 1123886, at *3 (S.D.N.Y. May 11, 2005).

Assuming, *arguendo*, that the advice to plead guilty in this case fell below a reasonable standard of professional competence, Richmond cannot demonstrate that the

10

results would have been different had he not entered the plea. At his plea, Richmond attested that he was pleading guilty freely and voluntarily, and that his plea was not the result of coercion or promises made by anyone. He further attested that he was aware of the consequences of his plea which were described by the prosecutor. Statements made under oath in open court carry a strong presumption of veracity, Blackledge v. Allison, 431 U.S. 63, 74 (1977), and should be accepted in determining the voluntariness of a plea. See Catino v. United States, 2001 WL 536928, at *7 (S.D.N.Y. May 21, 2001).[1] Richmond has never denied that he committed the underlying crime, only that the loss attributable to him was less than the amount alleged in the indictment. As the record amply demonstrates, Richmond was allowed to contest the dollar amount of loss and the Court did, in fact, find that the loss was less than that charged in the indictment. The fact that the sentence might not have been what Richmond anticipated based upon O'Hern's advice does not establish a claim of constitutionally ineffective assistance of counsel. See Foster v. United States, 1998 WL 386482, at *4 (D. Conn June 12, 1998)("It is well settled that 'erroneous advice by defense counsel as to sentence does not support an attack under § 2255 unless it amounts to ineffective assistance of counsel of such a kind as to

---

[1] As the Southern District explained in Catino v. United States, 2001 WL 536928, at *7 (S.D.N.Y. May 21, 2001),

> It has been said that "[c]laims by petitioners that their pleas were involuntarily made due to the erroneous advice or unrealized promises made by counsel 'afford an all too easy avenue for the invalidating of conviction on pleas of guilty.'" Hernandez v. United States, 839 F. Supp. 140, 143 (E.D.N.Y. 1993) (quoting United States v. Horton, 334 F.2d 153, 154 (2d Cir.1964). Thus, it is well-settled that "when considering the voluntariness of a defendant's plea, courts look to the voir dire of the defendant upon each plea to determine whether the plea reflected a 'knowing, free and rational choice of the alternatives open to the accused.'" Hernandez, 839 F. Supp. at 143 (quoting United States v. Melillo, 336 F.Supp. 1169 (S.D.N.Y. 1971)(quoting United States v. Malcolm, 432 F.2d 809, 812 (2d Cir.1970)).

2001 WL 536928 at *7.

shock the conscience of the court and make the proceedings a farce and a mockery of justice.'")(quoting <u>United States v. Horton</u>, 334 F.2d 153, 155 (2d Cir. 1964)(internal quotations omitted)). Accordingly, both claims are without merit and are dismissed.

### e. Ineffectiveness for failing to contest the amount of loss & submit a sentencing memorandum

Richmond's next two claims are that his attorney was constitutionally ineffective for failing to vigorously contest the amount of loss, and for failing to submit a sentencing memorandum. Both claims fail under <u>Strickland</u>.

Other than Richmond's unsupported denial of responsibility, Richmond has not demonstrated that O'Hern ignored any evidence indicating that the amount of the loss was less than that which the victim calculated. At sentencing, Richmond asserted that he, his wife, and sister worked "for hours" trying "to come up with information showing what was purchased" with the credit cards, but it was "impossible to come up with any information." 8/9/05 Sent. Trans., p. 8. Given the paucity of evidence contradicting the victim's calculation of loss, and in light of a situation that objectively appeared that Richmond was changing his story once he realized that a loss between $200,000 and $400,000 would increase his base offense level by 12 points, it was not professionally unreasonable for O'Hern to decline to "sign off" on Richmond's theory at the time of sentencing. "To decline to raise a failing or non-existent claim is well 'within the wide range of reasonable professional assistance.'" <u>Olivares v. United States</u>, 2006 WL 2057188, at *4 (S.D.N.Y. July 24, 2006) (quoting <u>Strickland</u>, 486 U.S. at 689). O'Hern acted in a professionally competent manner by arguing, based upon supported factors, that the amount of loss should be reduced. While Richmond apparently would have liked O'Hern to have more

12

vigorously advocated his position that the loss was less than $200,000, that position was unfounded and served only to cause Richmond to lose three points for acceptance of responsibility. See United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002).[2]

Further, and perhaps more importantly, O'Hern was successful in his argument. He was able to persuade the Court to find a lesser amount of loss than calculated by the victims. The lack of a "more vigorous" argument by counsel, or a sentencing memorandum, did not cause Richmond adverse consequences. See United States v. Vaval, 404 F.3d 144, 148 (2d Cir. 2005). Thus, the claims fail under Strickland.

**f.  Ineffective for failing to argue for a downward departure for extraordinary family responsibilities**

Richmond next contends that O'Hern was constitutionally ineffective because he did not argue for a downward departure based upon extraordinary family responsibilities although facts supporting the argument were available. In this regard, the PSR indicated that Richmond's wife suffers from lupus, thyroid disorder and asthma as well as having been diagnosed with Panic Disorder and Obsessive Compulsive Disorder and has a lengthy history of mental health problems. PSR ¶39.  The PSR further indicated that Mrs. Richmond "continued to operate a small craft store after her diagnosis, but has been collecting disability since the 1990s." Id.  The Richmonds have two small children, aged 9 and 2 at the time of sentencing, and the PSR indicated that Mrs. Richmond cared for the younger child. Id.

---

[2] In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" United States v. Sapia, 2002 WL 620483 at *4 (quoting Stokes v. United States, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001)).

Attorney O'Hern asserts that he declined to move for a downward departure based upon extraordinary family responsibilities for two reasons. First, "Mrs. Richmond had until shortly after her husband's arrest run her own business in Bennington[,] Vermont[,] so to suggest to the court that she was incapable of taking care of her children if her husband was incarcerated was unsupported medically, and by her employment history." O'Hern Aff. ¶ 25. Second, Mrs. Richmond's "medical records did not suggest a physical or emotional diagnosis that would take her husband's case out of the heartland of cases and rise to the level of a basis for a downward departure." Id. ¶ 36.

Given the facts as attested by Attorney O'Hern,[3] it was not professionally incompetent to decline to make the argument because the motion had little chance of success. See United States v. Sprei, 145 F.3d 528, 534 (2d Cir. 1998). "[M]any defendants shoulder responsibilities to their families. . . . Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992). It is only "[e]xtraordinary circumstances ... not capable of adequate consideration .... [that] may constitute proper grounds for departure." Id. "In other words, only if a district court finds the hardship to be exceptional may it downwardly depart on that basis." Sprei, 145 F.3d at 534 (citing United States v. Galante, 111 F.3d 1029, 1034 (2d Cir.1997)).

Further, the application would not have been successful if it were made. Simply stated, the Court would not have granted a downward departure on this ground because

---

[3]In reply to the Government's opposition, Richmond's wife submits an affidavit in which she rebuts many of the factual allegations contained in O'Hern's affidavit. However, this affidavit does not rebut O'Hern's contention that, until shortly after her husband's arrest, Mrs. Richmond ran her own business in Bennington, Vermont.

14

the Court would not have found the circumstance constituted an atypical and extraordinary hardship. "Failure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999).  Therefore, the claim fails under Strickland.

### III.  CONCLUSION

For the reasons set forth above, Richmond's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his petition is **DISMISSED**.

**IT IS SO ORDERED.**

DATED: January 4, 2007

Thomas J. McAvoy
Senior, U.S. District Judge